IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

REBECCA E. CASH                                                                                    PLAINTIFF

V.                                                                        CIVIL ACTION NO. 1:18-CV-165

WALGREEN CO.                                                                                    DEFENDANT

## ORDER AND MEMORANDUM OPINION

Rebecca E. Cash filed her Complaint [1] against Walgreen Co. in this Court on August 30, 2018, premising federal jurisdiction on the basis of federal question. Specifically, the Plaintiff alleges violations of the Age Discrimination in Employment Act and Title VII of the Civil Rights Act of 1964. The Defendant filed an Answer [5] on December 3, 2018. Now before the Court is the Defendant's Motion for Summary Judgment [55], requesting summary judgment in its favor. The issues are fully briefed and ripe for review.

*Factual and Procedural Background*

The claims in this case arise from a previous working relationship between the parties. The Plaintiff, a 56-year-old female, graduated with her pharmacy degree from the University of Mississippi in 1986. After graduating from pharmacy school, the Plaintiff worked as a staff pharmacist at the Columbus Hospital for less than a year. She then went to work as a pharmacist/assistant manager at Rite Aid in 1987. The Plaintiff worked at Rite Aid for 11 years.

The Plaintiff then worked at Family Meds in Columbus, Mississippi from 1998-2000. When she left Family Meds, she held the position of pharmacy manager. She then went to work at Winn-Dixie as a pharmacy manager from 2000-2004 until she was offered a job at Walgreen in Columbus, Mississippi. The Plaintiff claims that she was never counseled or disciplined for performance or policy violations while working at any of these locations.

The Plaintiff was hired as a pharmacist at Walgreen in 2004 where she worked from 10:00 p.m. to 8:00 a.m. She worked these hours in a seven days on, seven days off shift. She was never counseled or disciplined while working this shift. Shaquita Pruitt, a young black female, became the pharmacy manager at the Columbus store and the Plaintiff's direct supervisor in 2011. Prior to Pruitt becoming the Plaintiff's supervisor, the Plaintiff had never received a performance evaluation lower than a three on a five-point scale. While Pruitt did not discipline the Plaintiff in the four or five years she was her supervisor, she did give the Plaintiff scores under a three on her performance evaluations. Shacory Morris, a black female around 28 years old replaced Pruitt as the pharmacy manager in 2015. Morris had previously been a pharmacist at that Walgreen location, and the Plaintiff does not recall having any issues with her when they were co-workers.

Brandy Heartsill, a 37-year-old white female, became the store manager in 2013. The Plaintiff stated that Heartsill was not around the pharmacy when the Plaintiff was working; therefore, Heartsill did not know anything about the Plaintiff's performance other than what Morris relayed to her. The Plaintiff asserts that after Morris was promoted to pharmacy manager, she began talking down to the Plaintiff in front of customers and co-workers, would use harassing and derogatory comments to the Plaintiff, told the Plaintiff she should be "put out to pasture" multiple times, and referred to her as "Ms. Cash" in a mocking tone instead of "Dr. Cash." The Plaintiff asserts that Morris was making a slight at her age by calling her "Ms. Cash" as opposed to "Dr. Cash" because there was no such thing as a doctor of pharmacy degree when the Plaintiff finished pharmacy school in 1986.

Walgreen closed the overnight shift in 2015, closing the pharmacy at 11:00 p.m. The two pharmacists from the overnight shift, the Plaintiff and Steve Landrum, a 58-year-old Caucasian male, began working the 3:00 p.m. to 11:00 p.m. shift. The Plaintiff was later moved to the day

shift. The Plaintiff had worked alone on the night shift but would work with as many as four technicians at a time on the day shift.

The majority of the pharmacists at the Columbus store were white, and the majority of the technicians at the Columbus store were black. The Plaintiff alleges that she got along with the black technicians when Morris was not present. The Plaintiff further asserts that two of the young black technicians, Jalisa Butler, who was 24 years old at the time the Plaintiff was fired, and Jasmine Jackson, who was 27 years old when the Plaintiff was fired, believed they could make fun of the Plaintiff after hearing Morris harass her. For example, Butler also told the Plaintiff multiple times that she needed to be "put out to pasture," and Butler and Jackson would sing a song to the Plaintiff with the lines, "I hate you, I hate you, I can't wait until I never have to see you again." The Plaintiff alleges that Butler and Jackson would not do as the Plaintiff asked them to do. After the Plaintiff informed Morris of the technicians' decision to disregard the Plaintiff's instructions, Morris told the Plaintiff that she could tell the technicians to go home. When the Plaintiff told them to go home, however, they refused.

Morris indicated for the first time that she was not happy with the Plaintiff's work in the pharmacy when she gave her a score of 2.7 points out of five on her annual performance evaluation in August of 2016. The Plaintiff argues that Morris did not review the evaluation with the Plaintiff. Instead, she left the evaluation on the counter where others could see it. The Plaintiff disagreed with Morris's evaluation of her. Morris put the Plaintiff on a performance improvement plan (PIP) on February 22, 2017.[1] The parties dispute the reasons the Plaintiff was placed on the PIP. The Plaintiff argues she was told it was because her evaluation score was less than a three, but the

---

[1] The parties dispute whether the decision to put the Plaintiff on the PIP was collaborative between Morris and Heartsill or whether it was Morris's decision. The Plaintiff argues that Morris made the decision to place the Plaintiff on the PIP while the Defendant argues that it was a collaborative decision between Heartsill and Morris.

Defendant argues that it was because the Plaintiff's performance did not improve after her managers gave coaching and feedback to her. This was the Plaintiff's first time to ever be put on a PIP in her 13 years as a pharmacist at Walgreen and her 30 years total of working as a pharmacist, despite having received scores below a three from evaluations Pruitt conducted before Morris became the pharmacy manager. The Plaintiff argues that the only reason she received a low score from Pruitt was because Pruitt informed her that if everyone scored well then her bonus would be taken away.

The PIP noted areas in which the Plaintiff was required to improve, included expected dates for her to make those improvements, and provided tools for the Plaintiff to make these expected improvements. It is disputed how much interaction Morris had with the Plaintiff after placing her on the PIP. For example, the Defendant argues that Morris outlined expectations she had previously discussed with the Plaintiff and identified performance expectations for the Plaintiff after placing her on the PIP. The Plaintiff, on the other hand, argues that Morris only met with her one time during the PIP to go over her performance. The PIP listed a "30 day" follow up meeting but noted that the meeting was held on April 26, 2017 – 60 days after she was put on the PIP. Heartsill was not present for that meeting, and Morris conducted the follow up meeting with Tyler Tabor, an assistant manager, present as a witness. The Plaintiff's time under the PIP was concluded after the follow up meeting was held on April 26, 2017. The Plaintiff testified that Morris indicated that her performance was improved and that she should keep up the good work.

The Plaintiff received no further criticism of her work from the date the PIP was completed until August 14, 2017. The Plaintiff was at the pharmacy's drive through window on August 14, 2017 when she asked Morris whether they had restocked a medication they had run out of the day before. Morris responded to the Plaintiff by saying, "Everybody stop what you're doing…let me

walk over here and see if we got this so Becky won't have to walk." *See* [62] at 10. The Plaintiff and Morris then discussed Morris's response, and Butler and Jackson began laughing and singing their same song.

The Plaintiff called Heartsill to tell her what happened. Heartsill informed the Plaintiff that she would talk to Morris about the exchange. The Defendant asserts that Heartsill, Morris, and Nicole Lewis, a 35-year-old Caucasian female who was the store's district manager, had previously made a decision to place the Plaintiff on a two week notice on August 14, 2017 and that it was a coincidence that the Plaintiff's incident with Morris and her conversation about the two week notice fell on the same day. Heartsill contacted Lewis to ask whether they should proceed with the meeting about the two week notice in light of the Plaintiff's complaint about Morris. Lewis informed Heartsill that they should continue with the meeting. When the Plaintiff was later called back to Heartsill's office, she was told that she had two weeks to greatly improve her performance or risk being terminated. A few days after the August 14 meeting, Heartsill and Morris gave the Plaintiff a three-page list of improvements they thought the Plaintiff needed to make. Morris told Heartsill which improvements to include in the list. The Plaintiff was told that Morris would train her on whatever she thought the Plaintiff was doing improperly.

Prior to terminating the Plaintiff, Morris and Heartsill reviewed the items on the list, and Morris circled the items that she believed the Plaintiff did not improve during the two-week period. Heartsill admitted that she relied on Morris's evaluation of the Plaintiff's behaviors during this time because she was not in the pharmacy all day whereas Morris was. Heartsill and Morris consulted Lewis and determined that the Plaintiff had not made the improvements required of her at the end of the two-week period. The Plaintiff showed up to work in order to start her shift at 10:00 a.m. on August 28, 2017, when Morris told her she needed to go to Heartsill's office where

she met with Heartsill and Morris. Heartsill then told her that her employment was terminated. The Plaintiff was later replaced by 31-year-old Tao Wen, an Asian male.

The Plaintiff filed her EEOC charge against Walgreen on November 16, 2017. She included in her charge claims for race, age, and sex discrimination. The Plaintiff then filed her Complaint [1] after receiving a right to sue letter. Sometime between August of 2017 and February of 2018, the Plaintiff filed for social security disability because she said she was not able to find a job. The Social Security Administration found that the Plaintiff was not disabled and denied her application in February of 2018.

The Plaintiff was then hired as the pharmacy manager and a pharmacist at the Kmart in Columbus in February of 2018.The Plaintiff heard rumors around June of 2018 that the Kmart store in Columbus would be closing, so she quit her job at Kmart and started working at Family Pharmacy in Columbus.[2] The Plaintiff states that she left Family Pharmacy in November 2018 in order to help her nephew who had undergone open heart surgery in Cincinnati, Ohio and because some things happening at Family Pharmacy made her uncomfortable, and she was afraid those things might affect her pharmacy license. While in Cincinnati, the Plaintiff broke her foot, and she was subsequently put in a boot. In early 2019, the Plaintiff submitted this information to Social Security Disability. She filled out a Work History Report questionnaire on March 3, 2019. The Plaintiff represented to Social Security Disability that she had been unable to work since November of 2018 when she broke her foot and that her arthritis also kept her from keeping up with the pace that was now required in pharmacy. The Plaintiff's remaining claims are now a discrimination claim based on the fact that she is an older white female, an age discrimination claim under the ADEA, and a race discrimination claim under Title VII.[3]

---

[2] The Kmart in Columbus closed on July 27, 2018.
[3] The Plaintiff withdrew her sex discrimination claim. *See* [62] at 20.

Summary judgment is warranted when the evidence reveals no genuine dispute regarding any material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

In reviewing the evidence, factual controversies are to be resolved in favor of the non-movant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F. 3d 1069, 1075 (5th Cir. 1994). When such contradictory facts exist, the Court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000) (internal citations omitted).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323, 106 S. Ct. 2548. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 324, 106 S. Ct. 2548 (citation omitted). Mere "conclusory allegations, speculation, [or] unsubstantiated assertions are inadequate to satisfy the nonmovant's burden." *Pree v. Washington County Board of Supervisors*, 2018 WL 522776 at *6 (N.D. Miss. Jan. 23, 2018) (citing *Chen v. Ochsner Clinic Foundation*, 630 Fed. Appx. 218, 222-23 (5th Cir. 2015) ( citing *Douglass v. United Services. Automobile Association*, 79 F. 3d 1415, 1429 (5th Cir. 1996)).

*Analysis and Discussion*

As set forth above, the Plaintiff has asserted claims under both the ADEA and Title VII.[4]

## I.    Age Discrimination Claim

Under the Age Discrimination in Employment Act, it is unlawful for an employer "…to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). "A 'plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse action.'" *Mitchell v. TJX Companies, Inc.*, 2019 WL 3806369 at *5 (N.D. Miss. 2019) (slip copy) (quoting *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 176, 129 S. Ct. 2343, 174 L. Ed. 2d 119 (2009)). When a plaintiff seeks to use circumstantial evidence only to establish his or her claim, as is the case here, the Court uses the *McDonnell Douglas* burden-shifting framework to determine whether the evidence is sufficient. *Id.* (citing *Miller v. Raytheon Co.*, 716 F.3d 138, 144 (5th Cir. 2013)) "To survive summary judgment, the plaintiff must present sufficient

---

[4] In addition to her separate claims under the ADEA and Title VII, the Plaintiff makes an additional combined claim that she is in a protected class: older white woman. This Court has previously noted "that the Fifth Circuit has reviewed cases involving both age and another protected characteristic but has failed to extend coverage under the ADEA or Title VII to combined classifications; i.e. older women." *Brewer v. Alliance Healthcare Services*, 2013 WL 1896132 at *4, n. 1 (N.D. Miss. 2013) (citing *Cherry v. CCA Properties of America, LLC*, 438 F. App'x 348, 351 (5th Cir. 2011) (analyzing the plaintiff's claims based on race, age, and sex independently as opposed to the plaintiff's attempted "older African American female" claim.)). The Plaintiff cites to *Jefferies v. Harris County Community Action Association* to support her argument. *Jefferies v. Harris County Community Action Association*, 615 F.2d 1025, 1032 (5th Cir. 1980) ("We agree that discrimination against black females can exist even in the absence of discrimination against black men or white women."). However, the Fifth Circuit has distinguished *Jefferies* from cases such as the case at hand by noting that *Jefferies* focused on a claim that combined two protected classes under Title VII: race and sex. *Best v. Johnson*, 714 Fed. Appx. 404, 410 (5th Cir., Feb. 7, 2018) (internal citation omitted). The Plaintiff in this case attempts to make a claim by combining Title VII claims and an ADEA claim. In *Best*, this Court noted the significant differences in these statutes and the burdens they place on the parties. *Best v. Johnson*, 2018 WL 4145921 at *2 (N.D. Miss., Aug. 30, 2018). As a result, "[a]llowing [the Plaintiff] here to present evidence of age discrimination under the auspices [of] her Title VII gender discrimination claim…would be tantamount to allowing [the Plaintiff] to argue age discrimination in the context of a mixed-motive theory," and would "provide an end-run around the heightened standards set forth by Congress under the ADEA." *Best*, 2018 WL 4145921 at *2 (quoting *Bauers-Toy v. Clarence Central School District*, 2015 WL 13574291 at *6 (W.D.N.Y. 2015)). As a result, this claim fails and summary judgment on this claim is granted. In accordance with the above-referenced precedent, the Court will analyze the Plaintiff's ADEA claim and Title VII claim separately.

evidence to create a genuine issue of fact that she was discriminated against by her employer because of her age." *Id.* (citing *Gross*, 557 U.S. at 177-78, 129 S. Ct. 2342).

If the Plaintiff establishes a *prima facie* case, "the burden of production shifts to the defendant who must then proffer a legitimate nondiscriminatory reason for the employment action." *Inmon v. Mueller Copper Tube Co., Inc.*, 2018 WL 934823 at *2 (N.D. Miss. 2018) (citing *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 350 (5th Cir. 2005)). "If the defendant offers such a reason, the burden shifts back to the plaintiff to show that the reason offered by the defendant is pretext for discrimination." *Mitchell*, 2019 WL 3806369 at *5 (citing *Machinchick*, 398 F.3d at 350).

### A. Prima Facie Case

In order to establish a *prima facie* case for age discrimination under the ADEA, a plaintiff "must introduce evidence that (1) she is a member of the protected class, that is, over the age of forty; (2) that she is qualified for the position; (3) that she has been the subject of an adverse employment decision; and (4) that she was either replaced by someone outside the protected class, replaced by someone younger, or otherwise discharged because of her age." *Inmon*, 2018 WL 934823 at *2 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824, 36 L. Ed. 2d 668 (1973); *Machinchick*, 398 F.3d at 350).

The Defendant here contests only the second prong of the *prima facie* framework. It is undisputed that the Plaintiff was a member of the protected class, was the subject of an adverse employment decision, and was replaced by someone younger than her and who was outside the protected class.

Specifically regarding the second prong, the Fifth Circuit has held that,

> A plaintiff challenging [her] termination or demotion can ordinarily establish a *prima facie* case of age discrimination by showing that

> [she] continued to possess the necessary qualifications for [her] job
> at the time of the adverse action. By this we mean that [the] plaintiff
> has not suffered physical disability or loss of a necessary
> professional license or some other occurrence that rendered [her]
> unfit for the position for which [she] was hired.

*Berquist v. Washington Mutual Bank*, 500 F.3d 344, 350 (5th Cir. 2007) (quoting *Bienkowski v. American Airlines, Inc.*, 851 F.2d 1503, 1506, n.3 (5th Cir. 1988)). Here, the parties dispute whether the Plaintiff suffered from a physical disability that rendered her unfit for her position. Specifically, the Defendant argues that the Plaintiff is judicially estopped from arguing that she was qualified for her position and cites to the Plaintiff's social security application from March 2019 in which she stated "it is impossible for me to keep the pace that they expect now in pharmacy" and that she was "unable to do the things required of my profession anymore." *See* [67], Ex. 7 at Walgreen 000994.[5] The Plaintiff responded by arguing that she made those remarks one year and seven months after she was terminated from Walgreen. The Plaintiff further argues that when she made those comments, she had not worked since November 2018 and that her foot was in a boot because she had broken it twice. In other words, the Plaintiff contends that although she was unable to perform the necessary duties of a pharmacist as of March 2019, she was able to perform those duties at the time she was terminated from her job at Walgreen.

The doctrine of judicial estoppel "prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." *King v. Cole's Poultry, LLC*, 2016 WL 7191701 at *2 (N.D. Miss. 2016) (citing *Reed v. City of Arlington*, 650 F.3d 571, 573-74 (5th Cir. 2011) (quoting 18 James Wm. Moore et al., Moore's Federal Practice § 134.30 at 63 (3d ed. 2011)). "[T]he doctrine is intended to protect the integrity of the

---

[5] The Defendant also argues that the Plaintiff's Social Security application in 2017 judicially estops her from arguing that she was qualified for the position; however, the Plaintiff's application for Social Security in 2017 was denied, and the Defendant has provided no copy of the application to show what the Plaintiff represented to the Social Security Administration in the 2017 application.

judicial process by 'prevent[ing] parties from playing fast and loose with (the courts) to suit the exigencies of self-interest.'" *Id.* (citing *Brandon v. Interfirst Corp.*, 858 F.2d 266, 268 (5th Cir. 1988) (quoting *USLIFE Corp. v. U.S. Life Insurance. Co.*, 560 F. Supp. 1302, 1304-05 (N.D. Tex. 1983) (additional citation omitted)). Judicial estoppel is "an equitable doctrine invoked by a court at its discretion." *Reed*, 650 F.3d at 574 (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749-50, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001)). The Fifth Circuit has indicated:

> A court should apply judicial estoppel if (1) the position of the party against which estoppel is sought is plainly inconsistent with its prior legal position; (2) the party against which estoppel is sought convinced a court to accept the prior position; and (3) the party did not act inadvertently.

*Jethroe v. Omnova Solutions, Inc.*, 412 F.3d 598, 600 (citing *In re Coastal Plains, Inc.*, 179 F.3d 197, 206-07 (5th Cir. 1999)).

The Defendant cites *McClaren v. Morrison Management Specialists, Inc.* to support its argument for judicial estoppel. *McClaren v. Morrison Management Specialists, Inc.*, 420 F.3d 457 (5th Cir. 2005). In *McClaren*, the plaintiff brought an age discrimination claim under Texas law against the defendant after being denied an assistant director position. *Id.* at 460. The defendant argued that the plaintiff should be judicially estopped from contending that he was qualified for his position because he represented that he was unable to perform the required duties of his job prior to his termination. *Id.* at 461-462. In deciding whether judicial estoppel was applicable, the lower court, relying on Supreme Court, Third Circuit, and Texas case law, held that "McClaren's averment of disability and inability to perform his job 'as of June 6, 2000' (that is, two days prior to his termination) judicially estopped from subsequently claiming he was qualified for the…position that was denied him on June 8, 2000." *Id.* at 462.

In *McClaren*, the Fifth Circuit applied the Supreme Court's reasoning in *Cleveland v. Policy Management Systems Corporation* to the issue of whether judicial estoppel applied to an ADEA claim for the first time in the Fifth Circuit. *Id*. at 463 (citing *Cleveland v. Policy Management Systems Corporation*, 526 U.S. 795, 119 S. Ct. 1597, 143 L. Ed. 2d 966 (1999)). In so doing, the Fifth Circuit first considered whether there was a genuine conflict between the plaintiff's statements to the social security administration and his claim under the state disability statute. *Id*. at 464. The plaintiff's remarks were in fact conflicting; however, under the *Cleveland* analysis, the plaintiff was entitled to give an explanation for the inconsistency. *Id*. If the explanation was sufficient, the plaintiff survived the judicial estoppel argument. *Id*. In *McClaren*, the plaintiff was unable to provide a sufficient explanation, and thus he was judicially estopped. *Id*. at 466.

Here, as in *McClaren*, the Plaintiff's comments that she was no longer able to do what was required of her as a pharmacist in her application for SSDI and her argument under the ADEA that she was qualified to do her job as a pharmacist are conflicting. However, the Plaintiff's explanation that she made those comments one year and seven months after she was fired and after she had broken her foot twice provides a plausible explanation for the inconsistency. The Court finds that this explanation is sufficient to survive summary judgment on this issue. As a result, the Court finds that the Plaintiff was qualified for her position at Walgreen for *prima facie* purposes at this stage in the proceedings.

### B. Legitimate Nondiscriminatory Reason for Termination

Having found that the Plaintiff has established a *prima facie* case, the Court now examines the Defendant's proffered legitimate nondiscriminatory reason for the Plaintiff's termination. An employer's reason for an adverse employment action does not need to be credible or persuasive.

*Inmon*, 2018 WL 934823 at *3 (citing *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993); *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 898 (5th Cir. 2002)). Rather, the Defendant's burden is to "introduce evidence which, *taken as true*, would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action." *St. Mary's Honor Center*, 509 U.S. at 509, 113 S. Ct. 2742 (emphasis in original). The Defendant does not need to show the Court that its proffered reasons served as its actual motivation, but instead, it must show only the reasons for its decision by way of introducing admissible evidence. *Inmon*, 2018 WL 934823 at *3 (internal citations omitted). Here, the Defendant states that it fired the Plaintiff after she failed to meet staff pharmacist performance expectations after she failed to improve her performance consistently despite retraining, being placed on a PIP, counseling, and coaching. The Court finds that the Defendant's proffered reason is sufficient to satisfy its burden at this stage in the proceedings.

C. *Pretext*

Next, the Court looks to see whether the Plaintiff can show that the Defendant's proffered reason is pretext for discrimination against her. In order to establish pretext, the Plaintiff must provide evidence which shows that the Defendant's given reason for the termination is not the real reason the Defendant fired the Plaintiff. *Id*. (citing *Waggoner v. City of Garland, Texas*, 987 F.2d 1160, 1166 (5th Cir. 1993)). This evidence can show that the employer's proffered reason is not worthy of credence or is false or it can show that there was disparate treatment. *Id*. (internal citations omitted). Evidence offered to prove pretext must be "of such quality and weight that reasonable and fair-minded [persons] in the exercise of impartial judgment might reach different conclusions." *Id*. (quoting *Long v. Eastfield College*, 88 F.3d 300, 308 (5th Cir. 1996)). Additionally, in order for a plaintiff to establish a disparate-treatment claim under the ADEA, he

or she must prove that age was the "but-for" cause of the defendant's adverse employment decision. *Gross*, 557 U.S. at 176, 129 S. Ct. 2343 (internal citations omitted). This "but-for" cause does not, however, mean that age must be the sole cause of the termination. *Inmon*, 2018 WL 934823 at *3 (internal citation omitted). The Plaintiff must introduce evidence that the Defendant relied on its motivation in bad faith. *Swenson v. Schwan's Consumer Brands North America, Inc.*, 500 Fed. Appx. 343, 346 (5th Cir. 2012) (citing *Waggoner*, 987 F.2d at 1166 ("[The plaintiff] must, instead, produce evidence demonstrating that [the defendant] did not in good faith believe the allegations, but relied on them in a bad faith pretext to discriminate against [the Plaintiff] on the basis of [her] age.")). "Conclusory allegations, speculation, improbable inferences, unsubstantiated assertions, and legalistic arguments do not constitute an adequate substitute for specific facts showing a genuine issue for trial." *Inmon*, 2018 WL 934823 at *3 (citing *TIG Insurance Co. v. Sedgwick James of Washington*, 276 F.3d 754 (5th Cir. 2002)).

The Plaintiff argues that the Defendant's proffered reason for discharging her – failing to improve after being placed on a performance improvement plan – is pretext. First, the Plaintiff argues that Morris's statements that "They ought to just go ahead and put you out to pasture," and Morris's reference to her as "Ms. Cash" instead of "Dr. Cash" show discriminatory animus. *See* [62] at p. 25-26, 29. The Defendant argues that the comments were stray remarks and thus cannot prevent summary judgment.

Pretext can be shown from age-based comments. *Price v. Marathon Cheese Corp.*, 119 F.3d 330, 337 (5th Cir. 1997). "Age-related remarks are relevant to determining whether age discrimination has occurred; however, mere 'stray remarks' such as 'a younger person could do faster work' or calling an employee an 'old fart' have been held to be insufficient to establish discrimination." *Id.* (citing *E.E.O.C. v. Manville Sales Corp.*, 27 F.3d 1089, 1093 (5th Cir. 1994);

*Bienkowski*, 851 F.2d at 1507; *Waggoner*, 987 F.2d at 1166). If a comment is used to show an intent to discriminate, "the comment itself must be direct and unambiguous, allowing a reasonable jury to conclude without any inferences or presumptions that the protected status was an impermissible factor in the employer's choice to make an adverse employment decision against the plaintiff." *Comer v. Jesco, Inc.*, 1997 WL 671617 at *5 (N.D. Miss. 1997) (citing *E.E.O.C. v. Texas Instruments, Inc.*, 100 F.3d 1173, 1181 (5th Cir. 1996); *Bodenheimer v. PPG Industries, Inc.*, 5 F.3d 955, 958 (5th Cir. 1993)).

In order for circumstantial evidence of age-related comments to be evidence of discrimination, the comments must include (1) discriminatory animus and (2) must have been made by a person that either has leverage or influence over the relevant decisionmaker or the speaker must be the person responsible for the employment decision. *Ray v. United Parcel Service*, 587 Fed. Appx. 182, 195 (5th Cir. 2014) (citing *Laxton v. Gap, Inc.*, 333 F.3d 572, 583 (5th Cir. 2003) (citing *Russell v. McKinney Hospital Venture*, 235 F.3d, 219, 225 (5th Cir. 2000)).[6]

The comments at issue in this case are appropriate additional circumstantial evidence of discrimination based on age because the remarks indicate age animus and were made by Morris who, viewing the evidence in the light most favorable to the Plaintiff, was primarily responsible for firing the Plaintiff. The Plaintiff alleges that Morris told her on five or six occasions "They ought to just go ahead and put you out to pasture."[7] *See* [62] at p. 25, 29. The Plaintiff also alleges that Morris told her to "use your brain," "think for yourself," "get your life together," and to do

---

[6] Direct evidence of discrimination is analyzed under a four-part test. *Ray*, 587 Fed. Appx. at 195. Under this test, comments must be "(1) age related; (2) proximate in time to the [termination]; (3) made by an individual with authority over the employment decision at issue; and (4) related to the employment decision at issue." *Brown v. CSC Logic, Inc.*, 82 F. 3d 651, 655 (5th Cir. 1996) (internal citation omitted). The circumstantial evidence test is often considered with other alleged discriminatory conduct; however, the four-part test under *CSC Logic* is still applicable where the plaintiff fails to produce sufficient evidence to prove pretext. *Ray*, 587 Fed. Appx. at 195 (internal citation omitted).

[7] This comment is the only comment the Plaintiff uses in her age discrimination claim specifically. The other comments mentioned here were used in the Plaintiff's claim of discrimination for being an older white woman. The Court will address the remaining comments in this section for the sake of clarity and thoroughness.

two things at once which caused her to dread going to work when Morris was present.[8] *Id*. at p. 26. Additionally, the Plaintiff alleges that Morris referred to the other pharmacists as "doctor" but referred to the Plaintiff as "Ms. Cash" since a doctor in pharmacy degree was not available when the Plaintiff graduated. *Id*. at pgs. 25-26. The Court finds that a jury could find these comments to be indications of Morris having discriminatory motivations. *See Russell*, 235 F.3d at 226 ("That Ciulla did not explicitly remark to Russell, 'I do not like you because you are old,' does not render Russell's evidence infirm."); *see also Normand v. Research Institute of America, Inc.*, 927 F.2d 857, 864, n. 4 (5th Cir. 1991) ("[I]ndirect references to an employee's age…can support an inference of age discrimination."). Thus, a jury could find the content of Morris's comments to be indicative of age animus.

Next, there remains a genuine dispute as to whether Morris, the individual who made these comments, was "principally responsible" for the Plaintiff's termination. *Russell*, 235 F.3d at 226 (citing *Reeves*, 530 U.S. 133, 151, 120 S. Ct. at 2110). "Typically, the person with authority over the employment decision is the one who executes the action against the employee. However, that is not necessarily the case." *Id*. (citing *Long*, 88 F.3d at 306). "Courts do not 'blindly accept the titular decisionmaker as the true decisionmaker.'" *Laxton v. Gap, Inc.*, 333 F.3d 572, 584 (5th Cir. 2003) (quoting *Russell*, 235 F.3d. at 227)). "Rather, the discriminatory animus of a manager can be imputed to the ultimate decisionmaker if the decisionmaker 'acted as a rubber stamp, or the 'cat's paw,' for the subordinate employee's prejudice.'" *Id*. (quoting *Russell*, 235 F.3d at 227) (additional citation omitted)). "If the employee can demonstrate that others had influence or leverage over the official decisionmaker, and thus were not ordinary coworkers, it is proper to

---

[8] It is disputed whether Morris told the Plaintiff she needed to be put out to pasture or to think for herself, but it is not disputed that she told her to use her brain and to do two things at once. Nevertheless, at this stage in the proceedings, this evidence must be viewed in the light most favorable to the Plaintiff. *Little*, 37 F.3d at 1075.

impute their discriminatory attitudes to the formal decisionmaker." *Russell*, 235 F.3d at 226 (citing *Long*, 88 F.3d at 307; *Haas v. ADVO Systems, Inc.*, 168 F.3d 732, 734, n. 1 (5th Cir. 1999) (internal citation omitted)). "To invoke the cat's paw analysis, [the employee] must submit evidence sufficient to establish two conditions: (1) that a co-worker exhibited discriminatory animus, and (2) that the same co-worker 'possessed leverage, or exerted influence, over the titular decision maker.'" *Roberson v. Alltel Information Services*, 373 F.3d 647, 653 (5th Cir. 2004) (quoting *Russell*, 235 F.3d at 226) (additional citation omitted).

The Fifth Circuit has expressed uncertainty as to what standard to apply when utilizing the cat's paw doctrine in an ADEA case. *Harkness v. Bauhaus U.S.A., Inc.*, 86 F. Supp. 3d 544, 558-59 (N.D. Miss. 2015) ("Recognizing that the *Staub* '[c]ourt construed the phrase 'motivating factor in the employer's action,' which is in the texts of USERRA and Title VII [but] not… in the text of the ADEA,' the Fifth Circuit has called into question *Staub's* application to ADEA cases.") (quoting *Holliday v. Commonwealth Brands, Inc.*, 483 Fed. Appx. 917, 922 n.2 (5th Cir. 2012)). "Read together, *Nassar* and *Staub v. Proctor Hospital*, 562 U.S. 411, 131 S. Ct. 1186, 179 L. Ed. 2d 144 (2011) make clear that cat's paw analysis remains viable in the but-for causation context." *Zamora v. City of Houston*, 798 F.3d 326, 332 (5th Cir. 2015). "[I]n *Nassar*, the [c]ourt changed only the strength of the causal link – between the supervisor's actions and the adverse employment action – that the Plaintiff must establish." *Id*. (citing *Simmons v. Sykes Enterprises, Inc.*, 647 F.3d 943, 949-50 (10th Cir. 2011) ("applying *Staub* to ADEA case, which requires proof of but-for causation, and noting that to establish cat's paw causation in such a case, 'the relationship between a subordinate's animus and the ultimate employment decision must be more closely linked' than in 'motivating factor' cases.")). "In other words, the applicable standard of causation is relevant only to the latter portion of this *Staub* test – instead of being a proximate cause, the supervisor's

act must be a '[but-for] cause of the ultimate employment action.'" *Id.* (citing *Staub*, 562 U.S. at 422, 131 S. Ct. 1186) (additional citation omitted).

The Plaintiff argues that the cat's paw doctrine imputes Morris's discriminatory animus to Heartsill (the store manager) and Lewis (the district manager) because Heartsill herself did not observe the Plaintiff's performance but instead relied on Morris to give her a report on the Plaintiff's performance. In her declaration, Heartsill stated that she and Morris observed the Plaintiff's work in the pharmacy; however, she does mention that she relied on Morris's reports on at least one occasion. The Court also notes that Heartsill herself admitted that she did not observe the Plaintiff in the pharmacy on a daily basis. Additionally, she was not present at the "30 day" follow up on April 26, 2017. As such, questions of fact remain as to whether Morris had sufficient leverage to influence Heartsill's decision to terminate the Plaintiff. Therefore, questions of fact remain as to whether Morris's report to Heartsill was the but-for cause of the Plaintiff's termination. As such, the Court finds that summary judgment is not appropriate as to the Plaintiff's ADEA claim.[9]

## II.      *Racial Discrimination Claim*

The Plaintiff also argues that her termination was unlawful under Title VII of the Civil Rights Act of 1964 which states that it is "an unlawful employment practice for an employer… to discharge any individual…with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin. 42 U.S.C. § 2000e-2(a)(1).

---

[9] In addition to the age remarks, the Plaintiff included in her brief a list of facts as proffered reasons for why the Defendant's legitimate nondiscriminatory reason is pretext. However, the Plaintiff uses this evidence to support her combined claim of an older white female. It is unclear whether the Plaintiff intended for that information to apply individually to her age and race discrimination claims as well; however, since questions of fact remain as to Morris's ADEA claim, making summary judgment improper, the Court will not address the Plaintiff's remaining allegations in the analysis for age discrimination.

The claim for racial discrimination in this case is based on circumstantial evidence and is thus subject to the burden-shifting framework under *McDonnell-Douglas*. *See McDonnell Douglas Corporation*, 411 U.S. 792, 93 S Ct. 1817. This framework entails a three-step analysis. First, the Plaintiff must establish a *prima facie* case that a protected factor motivated the Defendant's employment decision. *Mayberry v. Vought Aircraft Co.*, 55 F. 3d 1086, 1089 (5th Cir. 1995); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002) ("[T]he precise requirements of a *prima facie* case can vary depending on the context and were 'never intended to be rigid, mechanized, or ritualistic.'") (internal citations omitted)). Second, after the Plaintiff has established a *prima facie* case, the Defendant bears "the burden of producing evidence that its employment decision was based on a legitimate nondiscriminatory reason." *Mayberry*, 55 F. 3d at 1089. Third, the Plaintiff must show "that the [D]efendant's proffered reasons were a pretext for discrimination." *Id.*

In order to establish a *prima facie* case under the *McDonnell Douglas* framework, a plaintiff must show that he or she was "(1) a member of a protected group; (2) qualified for the position he or she held; (3) that she suffered an adverse employment decision; and (4) either replaced by someone outside the protected group or treated less favorably than employees not in the protected group." *Suggs v. Lowndes County School District*, 804 F. Supp. 2d 510, 514 (N.D. Miss. 2011) (citing *Okoye v. University of Texas Houston Health Science Center*, 245 F.3d 507, 513 (5th Cir. 2001)). Here, as with the Plaintiff's age claim, only the second element of the *prima facie* framework is in dispute. The Defendant argues that the Plaintiff is judicially estopped from arguing she was qualified for her position because of the representations she made on her social security application in 2019. The Court relies on its analysis above regarding this argument, and therefore, finds that the Plaintiff was qualified for her position for summary judgment purposes.

The remaining factors of the *prima facie* framework are not in dispute, so the Court now looks to see whether the Defendant can offer a legitimate, nondiscriminatory reason for firing the Plaintiff. *See Mayberry*, 55 F.3d at 1089. The Defendant argues that its employment decision was based on the fact that although the Plaintiff was placed on a PIP, coached, retrained, and counseled, she still failed to consistently improve and thus failed to meet the staff pharmacist performance expectations. The Court again finds that the Defendant's proffered reason meets its burden.

Finally, the Court looks to see whether the Plaintiff can show that the Defendant's given reason is pretext for discrimination. *Id.* The Plaintiff again relies heavily on circumstantial evidence to show pretext. The Defendant argues that since Morris, Heartsill, and Lewis decided together to fire the Plaintiff then the Plaintiff cannot argue racial discrimination because Heartsill and Lewis were both Caucasian. The Plaintiff argues that the cat's paw doctrine applies here because Heartsill did not observe the Plaintiff in the pharmacy but rather relied on Morris to report her observations. However, Heartsill stated in her deposition that she did observe the Plaintiff in the pharmacy but that she did, on at least one occasion, rely on Morris's evaluation of the Plaintiff. In order for the cat's paw doctrine to apply, the Plaintiff must satisfy both conditions of the cat's paw analysis. "To invoke the cat's paw analysis, [the employee] must submit evidence sufficient to establish two conditions: (1) that a co-worker exhibited discriminatory animus, and (2) that the same co-workers 'possessed leverage, or exercised influence over the titular decision maker.'" *Roberson*, 373 F.3d at 653 (quoting *Russell*, 235 F.3d at 226) (additional citation omitted).

Here, the Plaintiff has provided no evidence of discriminatory animus that pertains to her racial discrimination claim. First, she has failed to establish that a similarly situated employee

outside her protected class was treated differently.[10] "Similarly situated employees are employees who are treated more favorably in 'nearly identical' circumstances; the Fifth Circuit defines 'similarly situated' narrowly." *Lopez v. Kempthorne*, 684 F. Supp. 2d 827, 857 (S.D. Tex. 2010); *citing Silva v. Chertoff*, 512 F. Supp. 2d 792, 803 n. 33 (W.D. Tex. 2007). "Similarly situated individuals must . . . fall outside the plaintiff's protective class." *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 405 (5th Cir. 2005). Additionally, "employees who have different work responsibilities or who are subjected to adverse employment action for dissimilar violations are not similarly situated." *Lee v. Kansas City Southern Railway Co.*, 574 F.3d 253255-56 (5th Cir. 2009) (internal citations omitted).

Here, the Plaintiff attempts to make an argument that she received disparate treatment because Morris treated the black pharmacy technicians more favorably than she treated the Plaintiff. She argues that Morris and the black pharmacy technicians would have parties and that they would not invite the white pharmacy employees to those parties. Further, she argues that they would bring plates of food from those parties to the black pharmacy technicians who were working and thus could not attend the parties but would not bring food to the Plaintiff. Butler and Jackson also testified to having potluck dinners with Morris and celebrating employees' birthdays together. The Plaintiff argues that they only celebrated the black employees' birthdays, and Morris testified to not inviting the Plaintiff to the birthday celebrations or to the parties at her house. While the technicians and Morris were black, the technicians were not similarly situated as their work responsibilities were not the same. *Id*. The Court finds that a pharmacy technician and a pharmacist are not comparable positions for the sake of the Plaintiff's argument. The Plaintiff also attempts

---

[10] It is unclear whether the Plaintiff was attempting to make an argument for disparate treatment in her racial discrimination claim when she compared herself to the pharmacy technicians, Melissa Stanford, Steven Landrum and others. The Court will address the issue for clarity.

to compare herself to Melissa Stanford, a 54-year-old Caucasian Walgreen employee who would work in the pharmacy one to two days a week. Stanford testified to overhearing Morris make derogatory and harassing comments to the Plaintiff as well as receiving such comments from Morris herself. However, Stanford was not similarly situated to the Plaintiff as she was not a pharmacist. Rather, she mostly worked in the photo department and assisted in the pharmacy when needed. Therefore, Stanford was not similarly situated to the Plaintiff either. *Id*.

Notably, the Defendant points out that the Plaintiff does not mention Steven Landrum, another staff pharmacist who is Caucasian and suffered no adverse employment decision and was still employed by Walgreen at the time the Plaintiff filed this action. Landrum has maintained satisfactory performance reports from Morris and has not raised a complaint of discrimination while working at Walgreen. The Plaintiff does, however, mention that Jalynn Gray, another Caucasian pharmacist was not invited to the parties at Morris's house either. She also mentions a conversation Morris and Gray had after the Plaintiff was fired and how Gray disagreed with the decision to fire the Plaintiff; however, Gray still received good performance evaluations after that conversation. The Plaintiff also mentions that Morris did not hire Patricia Lavender, an older white female after Walgreen bought out Rite Aid; however, the Defendant argues that Morris was not involved in that decision which took place after the Plaintiff was fired. The Plaintiff has not been able to show disparate treatment through her comparisons.

Additionally, the Plaintiff attempts to argue that Morris made remarks that were indicative of racial discrimination. The only evidence the Plaintiff has provided that could have been indicative of racial discrimination is that Stanford overheard Morris make statements about white customers like "…that white heifer needs to just get on out of here and leave me alone." *See* [62] at p. 28. In addition to the potential hearsay issues, that comment would be considered a stray

remark because it is neither about the Plaintiff nor the circumstances that led to the Plaintiff's termination. *Ray*, 587 Fed. Appx. at 195 (citing *Russell*, 235 F. 3d at 226). Because the Plaintiff cannot prove that Morris acted with discriminatory animus, there is no need for the Court to proceed to the second prong of the cat's paw analysis which would require the Plaintiff to show that Morris's alleged discriminatory animus affected Heartsill's and Lewis's decision to terminate her. *Roberson*, 373 F.3d at 653 (quoting *Russell*, 235 F.3d at 226) (additional citation omitted). Since no question of fact remains as to whether the Plaintiff was discriminated against because of her race, the Court grants summary judgment on this issue.

*Conclusion*

For the reasons fully discussed above, the Defendant's Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART. The Defendant's Motion for Summary Judgment as to the Plaintiff's combined claim of discrimination because she was an older white female is GRANTED. The Defendant's Motion for Summary Judgment as to the Plaintiff's claim of racial discrimination under Title VII is GRANTED, and the Defendant's Motion for Summary Judgment as to the Plaintiff's claim of age discrimination under the ADEA is DENIED and will PROCEED TO TRIAL.

It is SO ORDERED on this the 10th day of April, 2020.


/s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE